**UNITED STATES of America, Plaintiff-Respondent,**

v.

**Peter LUBERTAZZI, Defendant-Appellant.**

**No. 13303.**

United States Court of Appeals Third Circuit.

Argued Sept. 14, 1960.

Decided Oct. 5, 1960.

Norman Fischbein, Newark, N. J., for defendant-appellant.

Robert R. Blasi, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for plaintiff-respondent.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant's sole complaint before us arises out of the irresponsive comment of a witness while on the stand.

The indictment charged appellant with receiving and selling stolen motor vehicles, 18 U.S.C. § 2313, and with conspiracy to transport stolen motor vehicles in interstate commerce, 18 U.S.C. § 371. He was convicted of all three offenses and sentenced to three years imprisonment under the conspiracy count with similar concurrent sentences on the other counts.

Originally five defendants had been named in the indictments. Three of these pleaded guilty on May 22, 1959. The trial of the remaining two, appellant and his brother Anthony, started October 14, 1959. It consumed six trial days, concluding on October 22, 1959. There was a jury disagreement as to Anthony.

The episode upon which the alleged error is based occurred during the testimony of the Assistant Chief of the Certificate of Ownership Section, Department of Motor Vehicles of the State of New Jersey. The witness had been with the Department thirty-six years; with the Ownership Section, six years. His duty is to regulate and control records of all motor vehicles, transfers and documents existing between sales of motor vehicles. It was conceded that he was qualified to testify as to Department documents and automobile titles.

One of the automobiles involved in the government's proof was a Chevrolet 1958, 4 Dr, F58T179566 Bel Air. The witness was shown Government Exhibit No. 9 in evidence, on its face a Florida title to said car. He said, "Well, the paper itself, I would say is legitimate, but by comparison with other Florida titles I would say that the execution of it was fraudulent." A little further on he was shown Government Exhibit No. 6 in evidence. He stated it was a "perfectly good New Jersey certificate of ownership or title". He noted it identified the same automobile as the above mentioned Florida paper and that the person's name on the title was the one which the Florida title stated to be the purchaser of the motor vehicle. The witness was then handed Government Exhibits in evidence numbers 12, 17 and 21 and asked:

" * * * whether or not you are able to determine the authenticity or lack thereof of these three certificates?"

The witness replied:

"These are authentic New Jersey certificates of ownership. However they were stolen at gunpoint."

The defendant's attorney said, "If it please the Court—". The trial judge asked him to "wait a minute" and addressing himself to the remark of the witness stated:

"That will be stricken. You just describe what happened, if you are asked the question, and leave off the literary descriptions. You were asked whether they are legitimate. Yes, you said." The witness answered "The documents themselves are perfectly—". The court broke in "that was the only question". The witness concluding his answer said "—legitimate". Then the court, addressing the district attorney, said "Proceed Mr. Mangini". Thereafter, for over a page of the printed record, followed a series of routine identification questions and answers concerning the New Jersey certificates. This concluded, the court asked counsel for the defendants if he wished to make a motion. The attorney moved for a mistrial, urging that the observation of the witness, coupled with the fact that the three New Jersey certificates of sale to which he had referred were in evidence and would go with the jury, was highly prejudicial. The court who, from the record would seem to have so quietly managed the untoward incident as to have made it almost imperceptible, allowed both sides full argument. When that was concluded the court outlined the situation to the jury saying that:

"The witness had in his hands three New Jersey title certificates, or bills of sale, heretofore marked G–12, G–17 and G–21. A proper question was put to this witness and he made a responsive answer, whereupon, without any prodding by anyone, or suggestion by anyone, he volunteered the statement, which the

defendants complain about, that they —'they' referring to these three exhibits that I just mentioned—were taken at gunpoint. And it is for that remark that the defendants move for a mistrial. I will deny the motion. First of all, there is nothing in the indictment, or the charge, or any of the testimony heretofore given which stated directly, or from which a jury could reasonably infer that a gun had anything to do with this case, or that there was any holdup in the use of a gun in connection with this case, nor has there been any testimony, secondly, as I recall it—and, of course, the jury's recollection is going to govern—that either of these defendants stole these three exhibits, either at gunpoint or not at gunpoint, committed a theft of them; nor is the theft of these bills of sale involved as a charge against the defendants. Immediately upon the witness making that statement I spoke to the witness and reprimanded him for making it, all within the hearing of the jury, to refrain from making literary remarks."
Continuing, he said:

"But as a matter of extra precaution I now tell the jury that any remark made by this witness regarding these three exhibits having been taken by gunpoint at the present posture of the case, anyway, unquestionably, has utterly nothing to do with the charge against these defendants in this case. You will disregard such a remark. It was not a relevant response or a proper response to any question that was put to this witness. Whether or not they were taken at gunpoint, or whether or not they just came down from the sky somewhere, or whether they were properly in the hands of Mr. Lubertazzi is absolutely unaffected by this witness' remark."

He asked the jury that if it felt "it can disregard the statement of this witness and not be influenced in its decision by this remark that came out of his mouth?" Receiving affirmation from the jury that it could, he said:

"I ask that because while it is important that any defendant who is accused of a crime be convicted if a jury—this case or any other case —is convinced beyond a reasonable doubt that he is guilty, it is just as important in our society that an innocent man not be found guilty, and not be found guilty on improper evidence. Both of those principles are equally strong. The general administration of justice embraces both sides and the defendants here, and any defendant in our court comes here with as much right to what I have just stated—justice—as the Government has to see that somebody is convicted.

"I tell this witness, and any other one who may be here, if they will only listen to the questions and answer the questions that are put and not volunteer we will all save a lot of time. I don't attribute any fault at all to the United States Attorney because he asked no question at all which would justify such an answer."

All in all this was first rate judicial handling of the kind of possibly fearsome thing that haunts so many trials. As we view it the denial of the motion for mistrial was a sensible exercise of discretion. The court simply refused to allow a minor untoward incident to interfere with the serious business of the guilt or innocence of the defendants under the indictment. The blame for the remark was placed rightly and squarely on the witness. The latter, apparently with the idea of showing that the Department was free from fault, had made a statement that was no part of the government's necessary proof. The judge promptly eliminated it from the record, giving it short shrift as he did so but making sure that the jurors thoroughly understood and agreed that it was not in any way before them.

Federal law governs both appellant's unqualified constitutional right to a fair trial and the procedure involved in the motion for mistrial. McNabb v. United States, 1942, 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819. Ordinarily the disposal of a motion for mistrial is for the trial judge in his sound discretion. Under the facts of this case the decision of the district court is within that principle. It was warranted by the entire situation and entailed no abuse of discretion. United States v. Zeoli, 3 Cir., 1948, 170 F.2d 358, 360; United States v. Maggio, 3 Cir., 1942, 126 F.2d 155, 160; Marsh v. United States, 3 Cir., 1936, 82 F.2d 703–704; White v. United States, 4 Cir., 1960, 279 F.2d 740, 749–750 and cases cited.[1]

As we have indicated, such little exposure of the jury as there was to the uncalled for allusion by the witness was most satisfactorily offset first, by the disposal of it in stride and second by its formal authoritative excision from the trial with the jury's approval. Because of that, there would be no justification for our discussing in this opinion the possible relationship in certain circumstances of Marshall v. United States, 1959, 360 U.S. 310, 313, 79 S.Ct. 1171, 3 L.Ed.2d 1250, to the fundamental problem with which we are here concerned.

The judgment of the district court will be affirmed.

1. The New Jersey opinions relied on by appellant all hold that the granting of a mistrial is within the sound discretion of the court. In none of these was a mistrial allowed. The New Jersey Supreme Court in State v. Geiger, 1942, 129 N.J.L. 13, 15, 28 A.2d 57, 58 said, "Mistrials should only be granted in extraordinary and striking circumstances in order to prevent a failure of justice * * *." In State v. Witte, 1953, 13 N.J. 598, 611, 100 A.2d 754, 760 the Supreme Court of that state said regarding the granting of a mistrial: "The power is to be exercised with the greatest caution, in the furtherance of justice between the accused and the State. * * * Such is our judicial policy. Unless the vice is plainly ineradicable by an instruction to the jury, a mistrial is not allowable of right." State v. O'Leary, 1957, 25 N.J. 104, 135 A.2d 321 referred to on behalf of appellant, presented far stronger factual circumstances than those before us. There at a criminal trial a police lieutenant testified that a picture of the defendant in evidence had been taken from the police gallery. The Supreme Court, holding there was no clear showing of harm to the defendant, sustained the denial of a mistrial. State v. Scala, 1956, 38 N.J.Super. 568, 120 A. 2d 128, also offered by appellant, contained the feature so stressed by appellant. Exhibits had been marked for identification by the prosecutor. These were later excluded from evidence but remained in the presence of the jurors. This, it was argued in that trial, as it is quite similarly urged now, indelibly impressed the barred material upon the jurors. The denial of the mistrial motion in that instance was affirmed as within the discretion of the trial judge.