James Leroy COCHRAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16938.

United States Court of Appeals
Eighth Circuit.

Nov. 28, 1962.

Norman S. London, St. Louis, Mo., for appellant.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., for appellee; D. Jeff Lance, U. S. Atty., St. Louis, Mo., on the brief.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This is an appeal from a conviction for robbery of a federal savings and loan association organized and operating under the laws of the United States (§ 1464, etc., Title 12 U.S.C.A.) and putting in jeopardy the lives of specifically named persons "by the use of a dangerous weapon or device" in violation of § 2113 (a) & (d), Title 18 U.S.C.A.

For a reversal of this his second conviction for the same offense appellant does not claim that the evidence adduced at his trial was insufficient to support a verdict of his guilt.[1] He relies upon supposed specific errors occurring during the course thereof which he claims makes his present conviction *contra* to due process of law.

At 291 F.2d 633 we vacated appellant's prior conviction because of use by the Government of the fruits of an illegal search and seizure made incidental to appellant's arrest, as there was insufficient evidence to establish probable cause therefor without a warrant.

The errors of which appellant complains in his current appeal may be stated thus: (1) the trial court erred when it overruled his objection to the prosecutor's reference in closing argument to his association with an ex-convict and in refusing to instruct the jury to disregard said statement and in refusing to declare a mistrial; (2) it erred in refusing to suppress Exhibit 11 (a five dollar bill) and permitting that exhibit to be admitted into evidence, since it flowed, so appellant claims, from his arrest and the search which this Court previously declared illegal; (3) the trial court erred in admitting into evidence Government's Exhibit 11 when such exhibit was not connected to the defendant, because evidence in relation thereto "was too remote and highly prejudicial to" him; and (4) it "erred in refusing to quash his indictment when" appellant says "it was learned that no evidence had been presented to the Grand Jury returning such indictment."

Since there is no dispute as to the sufficiency of the evidence to sustain appellant's conviction and in the light of our previous opinion, supra, we shall consider the above assigned error *seriatim* and only state facts in relation thereto

---

1. Appellant did not testify at this his second trial and offered no evidence in defense of the charge made against him by the Government.

that will pinpoint the complaints which appellant makes in his instant appeal.

## I.

Six blocks from where the savings and loan association office was robbed, there was a restaurant operated by one Grace Aubuchon. Her son, Roland John Aubuchon, a five-time ex-convict then on parole, worked in that restaurant. On the day of the robbery appellant entered the restaurant at approximately 12:30 P.M. in company with a young woman and a small child. They went to a booth in the dining room, where the woman and child were seated. Appellant remained standing. He told the waitress the woman and baby would eat and he would be back in a little while as he had to leave on some business. Appellant then had a conversation with Roland Aubuchon and told him the same things. They were previously acquainted. Appellant then left the restaurant and returned in about a half-hour.[2] He then had something to eat, after which appellant, the young woman and child left the restaurant.

Roland Aubuchon testified that the day after the robbery he met appellant at a bar in the neighborhood and in paying for drinks appellant exhibited a large roll of bills. They had a conversation concerning the Roosevelt Federal Savings Association robbery. Aubuchon asked appellant, "did you pull that job?" Appellant smiled and stated to Aubuchon: "It took him too long to make that loan on the car."[3] Later that same day, while in the rest-room of the bar, Aubuchon testified, he saw a snub-nosed pistol stuck in the waistband of appel-

lant's pants. Such was the type of gun identified by employees of the savings and loan association as having been pointed at them by appellant at the time of the robbery.

Extensive cross-examination of Aubuchon by counsel for appellant covered Aubuchon's six previous convictions and his then present parole from one such conviction. Obviously, that was done to discredit before the jury Aubuchon's testimony which bolstered the Government's case of positive identification of appellant as the robber of the savings and loan association in question. No attempt was made to discredit Aubuchon's testimony as to his association with appellant, consequently that matter stands unimpeached in the record.

During the prosecution's opening summation to the jury, counsel for the Government in lawyerlike fashion reviewed the testimony of each of the Government's witnesses, including Roland Aubuchon's testimony. Thereafter, counsel for appellant in his summation made a vigorous attack on the positive identification of appellant by the employees of the savings and loan association's office, the testimony of other witnesses as to appellant's getaway in an automobile of the same color and description as later found in his possession, the testimony of Mrs. Aubuchon, the owner of the restaurant, and finally devoted his summation to verbally flaying Roland Aubuchon's testimony, denouncing and inveighing against the veracity thereof singularly from the standpoint of his admitted previous convictions and his appearance at this trial of appellant as a claimed surprise witness.[4]

2. The evidence established that the savings and loan association office was robbed at 12:55 P.M. Two employees of the association's office positively identified appellant as the robber who pointed a snub-nosed gun at them and forced them to give him money out of the association's money-till.

3. There was evidence before the jury to the effect that when appellant entered the savings and loan company office he asked the manager in charge for "infor-

mation about obtaining a car loan"; when told that the company did not make car loans appellant backed away, drew a gun and proceeded to rob the company office. From the record the only inference to be made is that Aubuchon had no other source of knowledge than that which he attributed to appellant, that a "car loan" was mentioned during the course of the robbery.

4. Appellant's counsel admitted before the jury that he had personally undertaken

It is in the above trial setting that Government counsel in his closing summation made the statement which appellant takes out of context and now asserts constitutes reversible error, on the ground that the prosecution thereby improperly initially put appellant's character in issue at his trial.

A fair determination of whether the prosecution in the case at bar initially put this defendant's character in issue cannot be ascertained from the isolated statement taken out of the context of Government counsel's argument. In his closing summation counsel for the Government said:

" * * * But Mr. London (counsel for defendant) tries to put across the point to you that I was trying to conceal the one name Roland Aubuchon. He also tried to give you the impression that when I walked out of this court room something very secretive was going on, that we were smuggling a witness in here. That witness came through the door the same as every other witness * * * if Mr. London desired to talk to him, he mentioned a time eighteen months ago, he could talk to that man anytime in the eighteen months, because he has been available and there is not one bit or one iota of truth that the government has tried to secrete this man, to hide this man, and how would have been the easiest way to bring the fact out but by questioning Roland Aubuchon. And actually what did the questioning of Roland Aubuchon really consist of? Going into his past criminal record. And that was done for one thing. To try to discredit this witness because of the deeds he may have done in his life.

"Now, the Court is going to instruct you as to a witness having a prior conviction. * * * I am sure of that portion of the Court's instruction too. But remember this is

to make a search for Roland Aubuchon for the purpose of interviewing him, in

an ex-convict, Roland Aubuchon. The government didn't try to hide that fact. Yet, who does that ex-convict associate with and who—

"Mr. London: Just a moment please.

"Bring your book, Miss Wood.

"(Thereupon the following occurred at the Bench, out of the hearing of the jury.)

"Mr. London: If the Court please, I am going to object to the comment of counsel at this point and ask that it be stricken and the jury instructed to disregard it and a mistrial be declared on the ground that the argument of Mr. Mayer constitutes a reference to the character of the defendant, whereas the defendant has not seen fit to place his character in issue in this cause.

"The Court: What did you intend to continue to say, Mr. Mayer?

"Mr. Mayer: Who did he associate with? Who was he in company with but this defendant. That's all.

"The Court: Is that all?

"Mr. Mayer: That is all I intended to say.

"The Court: Overruled. Proceed.

"Mr. London: When he completes the statement that he has just indicated, may the record show my renewed objection without my having to interrupt Mr. Mayer again?

"The Court: It may be so shown and it will be overruled.

"(Thereupon the trial on the issues was resumed in the presence and hearing of the jury.)

"Mr. Mayer: And who did that person Roland Aubuchon associate with? Who was he in the company with one night after the holdup? This defendant sitting in this court room right here. And what was Aubuchon's testimony as to what he saw on this defendant one night or

his preparation of the defense of appellant, prior to the instant trial.

one day after the holdup, but a revolver and a roll of bills. And what was their conversation about? That it took too long talking about the automobile loan.

"Now, gentlemen, I am not going to apologize for Roland Aubuchon. Roland Aubuchon is what he is. Yet he was a witness that could give you the facts as they actually occurred and the government brought him in here, and I will let the testimony of that witness stand on its own."

■ There can be no question about the proposition that it is improper for the Government to initially go into the character of a defendant in a criminal case and that the choice as to whether such issues should be presented to the jury is left solely with the defendant. Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469 (1918); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

■ But it is likewise the law:

" * * * that where evidence offered by the (prosecution) is otherwise competent, relevant, and material, it affords no valid ground for objection that such evidence may tend incidentally to put accused's character in issue, particularly where the court gives instruction limiting the jury's consideration of the evidence." 22A C.J.S. Criminal Law § 676, pp. 707–708 and cases there cited.

■ Roland Aubuchon's testimony in the case at bar as to his acquaintance and association with the appellant was not character or reputation testimony. The totality thereof connected appellant with the offense for which he was on trial. All facts affording any reasonable inference as to the identity of a person charged with having committed a crime are properly admitted where it tends to establish guilt. Any reasonable inference drawn therefrom which might tend to discredit appellant's character was only incidental and is no valid ground

for excluding such testimony or prohibiting reference thereto in summation on the ground that the accused has not put his character in issue. See, State v. Lorts (Mo.Sup.1954) 269 S.W.2d 88, 92, and authorities there cited. Schmidtberger v. United States, 129 F.2d 390 (8 Cir., 1942); United States v. Barbone, 283 F.2d 628, 632 (3 Cir., 1960).

■■ It is apparent from the colloquy at the Bench, out of the hearing of the jury, that the trial judge satisfied himself that counsel for the Government was not making an attack on the character of the appellant and that what counsel intended to say, and did say, as to Aubuchon's association with appellant was based on facts established by the evidence. Whether remarks made by Government attorney in a criminal case necessitates a reprimand or a discharge of the jury rests largely in the discretion of the trial court. Scales v. United States, 227 F.2d 581, rev. on other grounds, 355 U.S. 1, 78 S.Ct. 9, 2 L.Ed.2d 19; Aeby v. United States, 206 F.2d 296; Schmidtberger v. United States, supra; State v. Lorts, supra. On the evidence here and under the charge of the court which specifically limited consideration of previous convictions testimony to Aubuchon and to his character and the weight to be given thereto in testing the quality of his (Aubuchon's) testimony, we can find nothing which would justify us in holding that the District Court abused its discretion in any respect as now claimed by appellant.

### II.

■ Exhibit 11 in the case at bar was a $5.00 bill bearing a serial number established as coming from a bundle of similar bills identified as having been unlawfully taken by appellant at the time of the robbery in question. The day after that occurrence one Helen Marlowe (identified as the woman who was with defendant in the Aubuchon Restaurant on the day of the robbery as hereinabove noted) rented an apartment from a Mrs. Virginia Peters. Helen Marlowe paid Mrs. Peters $65.00 rent in

advance for such apartment in small bills. At the same time, she signed a lease for the apartment and told Mrs. Peters that her husband, Jim Marlowe (identified as defendant), would be in the next morning and also sign the lease. Appellant appeared at Mrs. Peters' apartment the next day (May 29th) and signed such lease, using the name "Jim Marlowe". After Helen Marlowe paid the rent for the apartment, Mrs. Peters put all the bills paid to her as rent, along with other rents paid to her, in her rent book and had retained Exhibit 11 in her possession until two days after appellant's arrest on June 6, 1960. Exhibit 11 was specifically traced to the money Helen Marlowe paid as rent. Appellant lived in the rented apartment with Helen Marlowe as her husband from the time of the rental thereof to the date of his arrest on June 6, 1960. On June 8, 1960, Mrs. Peters after initialing Exhibit 11 turned the same over to an agent of the Federal Bureau of Investigation.

It is manifest from the foregoing and the record here that Exhibit 11, infra, was not found in the apartment rented by appellant and his purported wife nor otherwise in his possession or under his control at the time of his arrest and the search of such apartment which we previously held to be illegal as being in violation of the Fourth Amendment. At the time of appellant's arrest said exhibit was in Mrs. Peters' possession; it was her property and could not, in any sense or reasoning have flowed directly or indirectly from the search as previously condemned by this Court, supra, as appellant now contends. There is no merit to appellant's assignment of error II, supra.

### III.

As above stated, there was direct, positive evidence that Exhibit 11 was taken by defendant in the course of the robbery. Hence, possession thereof was established to be in appellant after the robbery. Immediately before and after the robbery the appellant and the Marlowe woman were shown to have been in company of each other. The next day after the robbery at the time of renting the apartment in question there was a holding out by the Marlowe woman that appellant was her husband, which overture was personally confirmed by appellant to Mrs. Peters at the time he signed the lease for such apartment. Thus, primary evidence established that appellant claimed a beneficial interest in Exhibit 11 as a consequence of the delivery thereof to Mrs. Peters in payment of rent for the apartment in question. From such facts and others above stated, the jury could reasonably have inferred that appellant delivered Exhibit 11 to the Marlowe woman for the above personal, beneficial purpose as claimed by him. To make Exhibit 11 admissible in evidence against appellant, it was not necessary that the Government adduce testimony that would have excluded every inference that the Marlowe woman might, could, or did not receive such bill from a source other than defendant as appellant contends. All that the Government was required to prove were facts from which a reasonable person could infer that the bill which Mrs. Peters identified at appellant's trial came from him and that his original possession thereof was traced to the robbery committed by him. The only conclusion to be reached is that the jury, under proper instructions as given by appellant's trial court, which instructions are not challenged by appellant but which we nevertheless have examined and find declaratory of applicable law, could circumstantially find and determine that fact as it did by its verdict. There is no merit to appellant's assignment of error No. III.

### IV.

The burden of proof was on appellant to establish that no evidence was adduced before the Grand Jury to sustain his indictment. Stewart v. United States, 300 F. 769 (8 Cir., 1924); Carrado v. United States, 93 U.S.App. D.C. 183, 210 F.2d 712; see, also, Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Here the

District Judge examined the Grand Jury file and found the indictment proper on its face. He gave appellant's counsel adequate opportunity to present evidence in support of his motion to quash the indictment on the ground that no evidence was adduced before the Grand Jury. No such evidence was proffered. The record before us establishes that an agent of the Federal Bureau of Investigation did in fact appear before the Grand Jury. The only inference to be made from the record in the case at bar is that appellant's indictment was legally returned upon evidence adduced before a Grand Jury.

Affirmed.