**UNITED STATES of America,**
Appellee,

v.

**Frances KAHN, Vincent Pacelli and Israel Schawartzberg, Appellants,**

**No. 438, Docket 30430.**

United States Court of Appeals Second Circuit.

Argued June 3, 1966.

Decided July 18, 1966.

Rehearing Denied in Banc Aug. 26, 1966.

See also, D.C., 251 F.Supp. 702.

Jerome Lewis, Brooklyn, N. Y. (Frances Kahn, Bronx, N. Y., and Abraham Glasser, New York City, with him on the brief), for appellant Frances Kahn.

Robert Kasanof, New York City (Albert J. Krieger, New York City, on the brief), for appellant Pacelli.

Israel Schawartzberg, Bronx, pro se.

John S. Martin, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, and John E. Sprizzo, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

Frances Kahn, Vincent Pacelli, and Israel Schawartzberg appeal from judgments of conviction. All three were convicted of conspiracy to obstruct justice and suborn perjury, in violation of 18 U.S.C. §§ 371, 1503, and 1622. In addition, Pacelli was convicted of obstructing justice in violation of 18 U.S.C. § 1503. Each appellant was sentenced to two years' imprisonment on the conspiracy count. Pacelli also received a two-year concurrent sentence on the substantive count.

1. *The Sufficiency of the Evidence.*

The Government maintained at trial, and the jury found, that the appellants worked together in an effort to prevent

one Charles Hedges from testifying against appellant Pacelli. On appeal, each of the appellants challenges the sufficiency of the evidence as to the counts on which he or she was convicted.

Viewing the evidence in the light most favorable to the Government, United States v. Kahaner, 317 F.2d 459, 467 (2d Cir.), cert. denied 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963), the following story emerges from the testimony at trial. Hedges was convicted for violation of the federal narcotics laws and was sentenced to fifteen years' imprisonment by the District Court of the District of Connecticut in March 1961. In July 1962, Hedges agreed to testify against certain of the people with whom he had been associated in the narcotics trade. His testimony before a grand jury in the Southern District of New York in June and September 1964 contributed to an indictment against Pacelli and others for conspiracy to violate the federal narcotics laws. Hedges testified at the trial on that indictment in May 1965.

Towards the end of July 1962, Pacelli visited Joan Hedges, Hedges' first wife; gave her $500; found out that Hedges needed $5,000 to get out on bail pending appeal; and learned that his lawyer was Frances Kahn. On July 30, 1962, Schawartzberg, Kahn's legal secretary, met with Hedges' fiancee and future wife, Patricia Curtin; gave her $3,000 of $5,000 he apparently had received; and instructed her to use the money to open a savings account to be used as collateral for Hedges' bail.

On January 9, 1963, Schawartzberg introduced Pacelli to Hedges' second wife Patricia, saying that Pacelli had put up the money for Hedges' bail. Pacelli told Patricia that he would give Hedges and her as much money as they needed to go away pending the appeal and even afterwards. Schawartzberg told Patricia that "he [apparently meaning Pacelli] just doesn't want Charlie to do anything against him."

On January 14, 1963, Schawartzberg called Patricia, asked if Charlie was still Pacelli's friend, and said that Kahn was going to visit Charlie. Two days later, Kahn visited Hedges and asked what he intended to do. When he said, "Tell them to run because I'm through with them," she said: "I don't think that's like you. You wouldn't do anything like that." She made similar statements during her repeated later visits to Hedges whenever he indicated that he was thinking of "talking."

On September 22, 1963, Kahn told Hedges that if he didn't testify, Vince would lend him $25,000, which he wouldn't have to repay if he were indicted again, and that he could have complete protection.

In July and September 1964, Kahn told Hedges that if he were called before the grand jury he should push back the dates of his dealings in narcotics so that prosecution would be barred by the statute of limitations. In her July visit, she also told Hedges that if he did testify he should make sure that the Government guaranteed his wife's protection, since she was afraid for him and his wife; and she suggested that if he acted crazy he wouldn't have to testify. In an August 1964 visit, apparently referring to Hedges' intention to testify, Kahn said: "I hate to see you destroy yourself, and that's what you'll do."

The evidence just summarized was ample to take to the jury the question of appellants' guilt on the conspiracy count. We find no force in the contentions of Kahn and Schawartzberg that their acquittals on the substantive counts demonstrate the insufficiency of the evidence against them on the conspiracy count. The acquittals at most indicate inconsistency in the jury's verdict, which is not by itself grounds for reversal, Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); see United States v. Maybury, 274 F.2d 899 (2d Cir. 1960). The inconsistency here was not irrational, since the jury could have believed that Schawartzberg and Kahn, while working together with Pacelli, did so at his bidding and were correspondingly less culpable.

■ The evidence as to Pacelli's membership in the conspiracy was also sufficient to go to the jury. The jury properly could have found not only that Pacelli was working with Schawartzberg and with Schawartzberg's employer Kahn in an effort to keep Hedges quiet, but also that their joint efforts lasted up until the time Hedges began to testify before the grand jury. See United States v. Perlstein, 126 F.2d 789 (3d Cir.), cert. denied 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

■ Pacelli contends that the evidence against him on the substantive count was insufficient as a matter of law, since at the time involved in that count—January 9, 1963—there was no pending proceeding in which Hedges was to testify. See Pettibone v. United States, 148 U.S. 197, 207, 13 S.Ct. 542, 37 L.Ed. 419 (1893); United States v. Scoratow, 137 F.Supp. 620 (W.D.Pa. 1956). We need decide neither the correctness of *Scoratow* nor its application to a case in which the potential witness has actually agreed to testify. Pacelli's sentence on the substantive count was concurrent and of the same length as his sentence on the conspiracy count, and we conclude, for reasons set out elsewhere in this opinion, that his conviction on the conspiracy count should be affirmed. See Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); United States v. Benjamin, 328 F.2d 854, 856 (2d Cir.), cert. den. sub nom. Howard v. United States, 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497 (1964).

■■ We find no merit in Pacelli's contention that because he rested his case and moved for acquittal at the close of the Government's case, the jury should have been instructed to consider as against him only the evidence adduced on the Government's case. The question of the sufficiency of the Government's case was a legal one; and once the trial court had decided that the Government's case was sufficient to go to the jury, we see no reason why the jury should not also have been free to consider the testimony of Pacelli's codefendants.

### 2. *The Motions for Severance.*

■ Each of the appellants attack the denial by the trial court of his or her motion for a severance. Pacelli contends that the trial court should have severed the case as to him because he was prejudiced by the testimony of Kahn during the presentation of her defense, which tended to establish a link between Kahn and Pacelli which had been supplied only inferentially in the Government's case. This did not by itself require the trial court to sever Pacelli's case, see United States v. Houlihan, 332 F.2d 8, 15 (2d Cir.), cert. denied sub nom. Legere v. United States, 379 U.S. 828, 859, 85 S.Ct. 56, 115, 13 L.Ed.2d 37, 61 (1964), particularly since Kahn's testimony in no way indicated that she worked together with Pacelli in attempting to keep Hedges quiet. Pacelli also maintains that he was prejudiced by his codefendants' arguments that the whole case was an unfair attempt by the Government to destroy Kahn as a lawyer, since the jury may have thought it had to convict all three defendants in order to clear the Government of the charges made by Schawartzberg and Kahn. We believe that the danger of prejudice to Pacelli from his codefendant's position was far too remote to require severance. The jury could presumably keep separate the positions of the three defendants in this relatively short and simple trial. Cf. United States v. Bentvena, 319 F.2d 916, 930–931 (2d Cir.), cert. denied sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963).

■ Kahn and Schawartzberg contend that the denial of their motions for severance unfairly restricted their right to call witnesses. Their position appears to be that their joint trial made it less likely that Schawartzberg would give exculpatory evidence for Kahn, since at a joint trial, if Schawartzberg testified at all, he would waive the right not to answer questions about the crime charged, Johnson v. United States, 318 U.S. 189,

195, 63 S.Ct. 549, 87 L.Ed. 704 (1943); McCormick, Evidence § 131 (1954), whereas at a separate trial of Kahn, Schawartzberg could have testified in her behalf while refusing to answer questions which incriminated him. This possibility, standing by itself, did not make the denial of a motion for severance erroneous, Gorin v. United States, 313 F.2d 641, 645–646 (1st Cir.), cert. denied 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); Olmstead v. United States, 19 F.2d 842, 847–848, 53 A.L.R. 1472 (9th Cir. 1927), aff'd 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), at least in the absence of anything in this record indicating that the codefendant would have given exculpatory evidence, see United States v. Echeles, 352 F.2d 892 (7th Cir. 1965).

### 3. *The Charge on Conspiracy.*

 The trial court's instructions as to the law of conspiracy, attacked by Pacelli as not adequately focusing the attention of the jury on the questions whether the evidence established one conspiracy or many and whether Pacelli was a knowing member, were entirely proper in the context of this case. The court not only instructed the jury that it had to find that the conspiracy existed as charged in the indictment, but also that the defendants knowingly associated themselves with the conspiracy and that each defendant's association with the conspiracy had to be determined only from evidence as to that defendant's own acts, declarations, and conduct. See United States v. Stromberg, 268 F.2d 256, 264–265 and n. 10 (2d Cir.), cert. denied sub. nom. Lessa v. United States, 361 U.S. 863, 868, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

### 4. *The Conduct of the Prosecution.*

At several of the interviews between Kahn and Hedges while the latter was in prison, electronic equipment was placed with the consent of Hedges both on Hedges and around the room in an effort to record the conversations between the two. The resulting tapes were not particularly intelligible, since Kahn carried a portable radio with her on her visits and turned it up whenever she had anything important to say.

 Appellants' pre-trial motions to suppress these tapes were denied. We do not need to consider the merits of those motions, since the tapes were not introduced or mentioned at trial. Kahn and Schawartzberg contend that the prosecutor hinted at the existence of the tapes in his summation, when, after Kahn's counsel had pointed to Kahn's candor in testifying about the offer of money to Hedges, the prosecutor said, "Do you have any way of knowing whether or not had she denied that the Government could have proved it otherwise?" This brief remark, improper though it was, did no more than suggest the possession of further proof by the Government, if indeed it did that much: Hedges had testified for the Government as to the offer. Even if the tapes were unconstitutionally obtained, this fleeting reference did not amount to the use at trial of unconstitutionally obtained evidence. Cf. United States v. Guerra, 334 F.2d 138 (2d Cir.), cert. denied 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964).

 Nor should the trial court have dismissed the indictment because of the possibility that the tapes might have been played before the grand jury. Even if the tapes were illegally obtained, their admission before the grand jury would not justify the relief requested unless the defense was able to show that the indictment rested solely on incompetent evidence. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Cochran v. United States, 310 F.2d 585, 590 (8th Cir. 1962). Here, both Hedges and his wife Patricia testified before the grand jury, and their testimony was both competent and ample grounds for the indictment.

 Kahn maintains that the conduct of Hedges amounted to entrapment. She requested no charge on entrapment

at trial, and was entitled to none. There is no testimony in the record which suggests that Hedges ever asked for money for his wife or himself in return for not testifying.

 Kahn and Schawartzberg contend that the use of Hedges, if not entrapment, was so offensive that this court should reverse the convictions resulting from this use in the exercise of its supervisory power over the machinery of federal justice and law enforcement. Appellants find it particularly heinous that Hedges never told Kahn that he was no longer her client, and seek to show that the Government somehow abused the attorney-client privilege. However, the attorney-client privilege is not involved. That privilege is the client's, not the attorney's; and in any case, it does not extend to advice from the attorney in furtherance of a crime. McCormick, Evidence §§ 96, 99 (1954). Nor is the use of Hedges in some other fashion offensive. As we have seen, he did not solicit bribes from Kahn; she came to him with offers of bribes and with veiled threats that he better not testify.

 Kahn also urges upon us as grounds for reversal the alleged misconduct of an Assistant United States Attorney for the Southern District of New York. According to Kahn, Hedges admitted to this Assistant United States Attorney that he had been involved in the narcotics activity for which he had been convicted in Connecticut. This admission was made while Hedges was appealing from his Connecticut conviction, partly on the grounds of the insufficiency of the evidence against him. We fail to see how Hedges' right to challenge the sufficiency of the evidence against him was affected by his post-trial admission of guilt; or what the receipt of the post-trial admission, which apparently did not exculpate any of the codefendants, obliged the Assistant United States Attorney to do. In any event, the matter is entirely irrelevant to the present appeal.

5. *Rulings During the Course of Trial.*

 Appellants contend that a variety of the rulings of the trial court were erroneous. Kahn argues that the attorney-client privilege was improperly invoked to prevent her from describing the legitimate objectives of her many visits to Hedges in prison, and that this restriction made it seem that she visited Hedges only for illicit purposes: suborning perjury or trying to prevent him from testifying. However, as the Government makes clear in its brief, Kahn herself suggested that she should not go into the nature of the topics discussed with Hedges. She hardly can object to a ruling she invited and did not object to when made.

 Kahn and Schawartzberg contend that Hedges should not have been allowed to invoke his privilege against self-incrimination when questioned about the details of crimes, the commission of which he already had admitted. We do not think it was reversible error to prevent defense exploration of the details of the crimes on cross-examination. Hedges may well have waived his privilege against self-incrimination by admitting commission of the crimes, but Kahn and Schawartzberg had already gotten most of the benefit they were going to get out of the crimes by virtue of Hedges' admission. His admission at once undermined his own credibility and indicated a legitimate lawyer-client reason for the many visits by Kahn to Hedges in prison. Exploration of the details of the crimes would have been largely superfluous. See United States v. Irwin, 354 F.2d 192, 198 (2d Cir. 1965); United States v. Owens, 263 F.2d 720, 722 (2d Cir. 1959).

 Appellants also contend that the court should not have permitted the jury to be present when the Jencks Act material was being marked for identification. Perhaps it would be better had the identification of the Jencks Act material been done in the absence of the jury, see Johnson v. United States, 121 U.S.App. D.C. 19, 347 F.2d 803, 806 (1965); but

this taken by itself is not sufficient grounds for reversal. See Roberson v. United States, 282 F.2d 648, 650–651 (6th Cir.), cert. denied 364 U.S. 879, 81 S.Ct. 167, 5 L.Ed.2d 108 (1960).

6. *Conclusion.*

We have carefully considered each of the remaining assignments of error put forward by the appellants, and find them devoid of merit. The convictions are accordingly affirmed.