**UNITED STATES of America,
Plaintiff,**

**v.**

**Ann GLEASON, Mollye Karp and Frank Pitkin, Defendants.**

**No. 64 Cr. 348.**

United States District Court
S. D. New York.

Oct. 5, 1966.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, for plaintiff, Andrew J. Maloney, Asst. U. S. Atty., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Karp, Jay H. Topkis, Gerald D. Stern, New York City, of counsel.

### MEMORANDUM

FRANKEL, District Judge.

The three defendants are charged in a multi-count indictment with income tax evasion. Defendants Gleason and Karp were business partners during the years in question. Pitkin was their accountant. Karp has moved for a severance

under Rule 14 and for discovery and inspection under Rule 16, Fed.R.Crim.P.

1. In her motion for severance, defendant Karp asks that she be tried separately from defendant Pitkin. As grounds for such relief, she and her attorney have filed affidavits asserting that, as accountant for her and Gleason, Pitkin "handled all of their tax matters, * * * organized, maintained and prepared their business and tax records, * * * prepared the income tax returns in question, * * * had all of his client's relevant papers and records before him when he did so, and * * * handled the ensuing investigation by the Internal Revenue authorities." Further, she affirms on oath that Pitkin determined the business and record-keeping procedures; that he alone directed the drawing of checks, with his clients having only to sign their names; that he furnished the net worth statements on which the Government now proposes to rely; and that, after his discharge from the accountant's role, he turned over to the Government the books and records of Karp and Gleason. It is sworn, in short, that the movant placed herself trustingly in Pitkin's hands, and followed his instructions in all pertinent transactions without any reason to believe that her income tax obligations were not being faithfully discharged.

The moving affidavits go on to show, and it is not disputed, that Pitkin has in the past made written and oral statements tending to exculpate his taxpayer-clients. Karp also undertook to exculpate herself by appearing and testifying before the grand jury. However, "Pitkin refused to do so," and Karp's counsel have since been unable to discuss the case with him.

The Government has declared in a bill of particulars that it will proceed by the net worth and expenditures method of proof. The prosecution will thus undertake to establish that the records and returns prepared and allegedly controlled by Pitkin were false in material respects. Karp, on the other hand, in the affidavits now presented and in her grand jury testimony, has pleaded essentially her ignorance concerning those records and her reliance upon Pitkin—all with a view to establishing, as her counsel states, "the central defense * * *. that the women taxpayers did not have any guilty knowledge or criminal intent."

■ For the foregoing reasons, Karp says, it is essential that she be able to call Pitkin as a witness for her defense. Since she cannot do this if they are tried together, United States v. Housing Foundation of America, 176 F.2d 665 (3d Cir. 1949), or comment on his failure to testify in a joint trial, De Luna v. United States, 308 F.2d 140, 1 A.L.R.2d 969 (5th Cir. 1962), she urges that a severance be granted.

In response to the motion, the Government agrees that Karp will be unable to call Pitkin or comment on his silence if they are tried together. It opposes the motion, however, on several grounds of varying substantiality:

a. The prosecution notes that both Karp and Gleason have made prior motions. It stresses particularly that defendant Gleason "made a *motion* for *severance* pursuant to Rule 14 which was denied." Affidavit in Opposition, par. 4 (emphasis in original). It omits, however, that Gleason's motion was upon an entirely different ground. In the end, neither that motion nor any of the others presents any weighty reason for denying the present one. Indeed, the supplying of particulars and other developments as this case has moved, somewhat slowly, toward trial would seem to make the motion more appropriate and persuasive now than it might have been at some "relatively early stage of the proceedings * * *." United States v. Berman, 24 F.R.D. 26, 29 (S.D.N.Y.1959).

b. The Government points out that Rule 8(b) allows joinder in cases like this one and that there is a broad measure of discretion in deciding motions for severance under Rule 14. This helps to define the problem. It is not, nor is it claimed to be, sufficient ground for decision either way.

c. The Assistant United States Attorney reports that he has spoken to Pitkin's attorney, who says "he would advise the defendant Pitkin to invoke his privilege under the Fifth Amendment" if Pitkin were called to testify "before a final disposition of his case * * *." Affidavit in Opposition, par. 9. Accordingly, the prosecutor adds (ibid):

> "It is hard to believe that defendant Karp does not suspect this and hopes to confuse a petit jury by having a co-defendant invoke the Fifth Amendment during her trial, a tactic which would fail in any event. United States v. Maloney, 262 F.2d 535 (2d Cir. 1959)."

This is the most interesting of the Government's contentions. It does not serve, upon analysis, to defeat the arguments for severance.

It may be questioned, first of all, whether the prediction about another defendant's disposition to testify—even where the prediction rests upon the advice of that defendant's counsel, who may not have unqualified reasons for sharing confidences with the prosecution—is "properly the Government's to interpose." United States v. Echeles, 352 F.2d 892, 898 (7th Cir. 1965). Passing this, as the argument of the motion demonstrated, the matter is surely in the realm of speculation. If Pitkin is tried separately and first, he may plead, or be found, guilty. He may choose to testify in his own defense. He may, as the law presumes, be acquitted, whether or not he takes the stand. One way or another, it is possible that he will come to lack a subsequent basis for invoking the privilege. Cf. Namet v. United States, 373 U.S. 179, 188–189, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

On the other hand, if Karp (with or without Gleason) is tried first, Pitkin may by then have changed his mind—or he may, even foolishly, reject his lawyer's advice—and waive his privilege.

If he does not, it is less clear than the Government says that Karp will be forbidden to call him to the stand and invite the jury to draw inferences from his failure to testify. As noted earlier, the Government relies upon United States v. Maloney, supra, for its conclusion that this tactic is a forbidden weapon in Karp's defense. But that authority stands at most for the point that the *prosecution* may not call a witness knowing he will plead the privilege against self-incrimination and having only the purpose of generating an inference adverse to the defense.[1] Cf. Namet v. United States, supra; Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). There is at least some basis in principle and authority for supposing that a *defendant* is not similarly inhibited. In De Luna v. United States, 308 F.2d 140, 141, 1 A.L.R.2d 969 (5th Cir. 1962), it was held that:

> "If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendant be tried separately."

Elsewhere in that opinion (p. 143), the Court made explicit its premise that counsel for a defendant in a criminal case

> "should be free to draw all rational inferences from the failure of a co-defendant to testify, just as an attorney is free to comment on the effect of any interested party's failure to produce material evidence in his possession or to call witnesses who have knowledge of pertinent facts."

■ There is no occasion now, and there may never be one in this case, to pursue that suggestion. Cf. Hayes v. United States, 329 F.2d 209, 221–222 (8th Cir.), cert. denied sub nom. Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964). It is enough to say that Karp has shown persuasive ground for the claim that she

---

1. It is unnecessary here to insist that the decision was actually put still more narrowly on the ground that the "accredited ritual [of telling the jury not to draw the inference] was not followed * * *." 262 F.2d at 538.

needs Pitkin's evidence; that the need must almost certainly go unsatisfied in a joint trial; and that there is substantially greater likelihood of her using him if they are tried separately. Viewing the matter as one of discretion, and weighing the probabilities in light of the interest in expeditious as well as fair proceedings, I find it appropriate to order a severance now rather than to await the commencement of a joint trial and the attendant likelihood that a severance will then be required to avoid prejudicial error. United States v. Echeles, 352 F.2d 892 (7th Cir. 1965). Here, as in the cited decision, this course seems especially warranted in light of the relatively small dimensions of the case; the severance should not entail heavy burdens of added time and expense. See id. at·899; United States ex rel. Floyd v. Wilkins, 367 F.2d 990 (2d Cir. 1966). Cf. United States v. Berman, 24 F.R.D. 26 (S.D.N.Y.1959).

■ Something more has been argued on the question of timing. Defendant Karp urges that Pitkin ought to be tried first to enhance her chances of calling him in her defense. It has been said in somewhat comparable circumstances that it would not be "egregious" if "the trial judge, after granting the motion for separate trial, also directed the Government to proceed first with the case against" a defendant positioned roughly like Pitkin. United States v. Echeles, supra, 352 F.2d at 898. Apart from the thought that avoiding egregiousness is a somewhat minimal standard, I find good reason to refrain from prescribing now the order of the separate trials. Pitkin is not before me at the moment.[2] He is surely entitled to be heard, if he wishes, on a question like this. There may be good reason why Karp's trial should proceed first despite the contrary indications disclosed on the present motion.

It is scarcely necessary to add that we proceed always on the elementary premise that the Government's interest is in the most effective pursuit of truth and justice. If there is no more to the problem than the considerations canvassed here, the prosecution will presumably follow the route best calculated to permit the fullest and freest possible exploration by both sides.

■ 2. The application for discovery, already granted from the bench, has seemed simpler. Defendant Karp asked to inspect and copy her statements to government agents and grand jury testimony, matters clearly available to her under Rule 16, Fed.R.Crim.P., effective July 1, 1966. In opposition, the Government noted that a similar motion was denied some time ago, and said "now Karp seeks to take advantage of the new Rules * * *." This sole objection is not a moving one. The case still awaits trial. The new Rules were written to be taken advantage of. There is no hurt to the Government in applying them here. This is by no means the first case illustrating that fortuitous matters of chronology may make a difference, sometimes a dramatic and painful difference, for a defendant in a criminal trial. E. g., compare Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), with Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

To. summarize and record the court's rulings: The motion for severance is granted to the extent of requiring that Karp be tried separately from Pitkin. The motion for discovery and inspection is also granted. It is so ordered.

---

**2.** Neither, by the way, is Gleason. The decision here requires only that Karp be tried separately from Pitkin. Nothing appears now to suggest that there should be three trials. But it is not appropriate to decide at this time, and I do not, whether Gleason should be tried with Karp, with Pitkin, or with neither.