UNITED STATES of America, Appellee,

v.

E. Graydon SHUFORD, Appellant.

United States of America, Appellee,

v.

Herman S. JORDAN, Jr., Appellant.

Nos. 71–1424, 71–1425.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 23, 1971.

Decided Dec. 23, 1971.

Haynsworth, Chief Judge, dissented and filed an opinion.

1. "[D]eath if the verdict of the jury shall so recommend . . . ." 49 U.S.C.A. § 1472(i) (1) (A).

Before HAYNSWORTH, Chief Judge, SOBELOFF, Senior Circuit Judge, and WINTER, Circuit Judge.

SOBELOFF, Senior Circuit Judge:

This case raises one of the problems sometimes encountered when two criminal defendants, each surrounded by a multitude of procedural protections, are tried jointly and the effectuation of one defendant's rights necessarily works an infringement of the rights of the other.

E. Graydon Shuford and Herman S. Jordan, Jr., appeal from their convictions under 18 U.S.C. §§ 371 and 1001, for (1) the knowing submission of a false document with reference to a matter within the jurisdiction of the Department of Justice and (2) conspiracy. Each defendant was sentenced to 18 months imprisonment on each count, sentences to run concurrently.

I

The events leading to these convictions began in the fall of 1969 when Shuford, an attorney specializing in personal injury cases, helped establish the West Ashley Physical Therapy Laboratory ("Laboratory") in conjunction with one Gene H. Long. The latter, named in the indictment as a co-conspirator but never brought to trial, was an experienced physical therapist who ran the Laboratory and was responsible for billing patients and general record keeping. The Laboratory was formed in order to provide physical therapy for those of Shuford's clients who required such treatment.

F. Lee Bailey, Boston, Mass. (N. Welch Morrisette, Jr., Columbia, S. C., Gerald Alch, Boston, Mass., Ralph C. Robinson, Jr., Columbia, S. C., on brief), for E. Graydon Shuford.

C. D. Hopkins, Jr., Hanahan, S. C. (Malcolm M. Crosland, Charleston, S. C., on brief), for Herman S. Jordan, Jr.

Marvin L. Smith and Robert G. Clawson, Jr., Asst. U. S. Attys. (John K. Grisso, U. S. Atty., on brief), for United States.

Two weeks after the Laboratory opened, Long approached Shuford and told him that some of the physical therapy patients were not keeping their appointments. Shuford instructed Long to bill these patients for their unkept appointments anyway. Several days later, Long had occasion to speak with Jordan, a legal investigator employed in Shuford's office, about the unkept appointments. Jordan, when informed by Long of Shuford's earlier instructions, told Long to do as he had previously been directed.

Meanwhile, on November 17, 1969, Mack C. Wheat was involved in an automobile accident with an agent of the Federal Bureau of Investigation. Wheat retained Shuford as his attorney and was ultimately referred to the Laboratory for physical therapy. In January of 1970, Shuford filed on behalf of Wheat an administrative claim for settlement under the Federal Tort Claims Act. Appended to the claim was a bill for Wheat's physical therapy treatments at the Laboratory—a bill which included $45 in charges for three unkept appointments. No indication appeared on the face of the bill that these appointments were not kept. However, a hospital bill, also submitted with the claim, indicated that Wheat was in the hospital on the dates of the three appointments in question. The claim was therefore rejected and a criminal investigation was begun, resulting in the instant prosecution.

Before the trial began and again after the prosecution submitted its evidence, Shuford moved that Jordan's case be severed from his own so that he might have the benefit of Jordan's testimony.[1] Jordan likewise moved to have his case severed and joined in Shuford's motion. Although Shuford testified in his own behalf, Jordan ultimately decided not to take the stand. According to Jordan's statement to the court in support of Shuford's second motion for severance, two considerations prompted his decision not to testify: First, he wanted to avoid cross-examination that would bring to light certain prior convictions of his, and second, he planned to stand on the insufficiency of the Government's evidence and feared that if he took the stand in his own trial, he might strengthen the case against him by placing his credibility and demeanor before the jury. Shuford's attorney, arguing the motion for severance, further asserted, apparently without dissent by Jordan, that Jordan was not averse to testifying in Shuford's behalf at a separate trial, since his own defense would not thereby be jeopardized.

Before ruling on the motions for severance, the trial judge, in an endeavor to meet Jordan's objections to taking the stand in the joint trial, offered to forbid the Government from raising Jordan's prior criminal record on cross-examination. Jordan, however, still remained unwilling to testify, preferring to challenge the sufficiency of the Government's case without exposing himself as a witness in his own behalf. The trial judge denied the severance motions.

Shuford argues that only if severance were granted and Jordan were not before the court as a defendant could he have called Jordan to testify in his behalf. Since Jordan was the only witness Shuford could present to controvert the testimony of Long, the Government's chief witness, Shuford contends that denial of the severance so prejudiced his defense as to destroy the fairness of his trial.

## II

Primarily for reasons of economy of time in judicial administration, the general rule has evolved that persons jointly indicted should be tried together. Hall v. United States, 83 U.S. App.D.C. 166, 168 F.2d 161 (1948); Dykes v. United States, 114 U.S.App.D. C. 189, 313 F.2d 580 (1962). This rule has particular strength where, as here, one crime may be proved against two

---

1. When Shuford's attorney first moved for severance, he stated to the trial judge, "I know what [Jordan's] testimony would be, and it directly contradicts the indictment."

 At the conclusion of the Government's case, in arguing Shuford's second motion for severance, made with leave of court, Shuford's attorney was even more explicit. He asserted, "Jordan would testify if he could be produced that there was no instruction to his knowledge as the witness Long has testified to falsify or build up any therapy lab reports"; that he had no knowledge that the Mack C. Wheat bill was false or erroneous in any respect until the criminal investigation began; and that he conspired with no one to create any false or fraudulent reports as to anyone involved.

or more defendants on a single set of facts or from the same evidence. United States v. Lebron, 222 F.2d 531 (2d Cir. 1955), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). Notwithstanding the need for efficiency in judicial administration, a joint trial is inappropriate if it sacrifices a defendant's right to a fundamentally fair trial. Baker v. United States, 329 F.2d 786 (10th Cir. 1964), cert. dismissed, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964); Barton v. United States, 263 F.2d 894 (5th Cir. 1959).

For these reasons, although Rule 14 of the Federal Rules of Criminal Procedure places the grant or denial of a severance in the sound discretion of the trial judge, Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Frazier, 394 F.2d 258 (4th Cir. 1968), if a "substantial degree of prejudice" springs from a joint trial, a severance is mandated. United States v. Morgan, 394 F.2d 973 (6th Cir. 1968); United States v. Burgio, 279 F.Supp. 843 (S.D.N.Y.1968). Not surprisingly, the facts peculiar to each case will determine whether sufficient prejudice exists to make the denial of a severance reversible error. Schaffer v. United States, 221 F.2d 17, 19 (5th Cir. 1955).

The reported decisions support the proposition that a severance is obligatory where one defendant's case rests heavily on the exculpatory testimony of his co-defendant, willing to give such testimony but for the fear that by taking the stand in the joint trial he would jeopardize his own defense.

The leading exposition of this proposition is United States v. Echeles, 352 F.2d 892 (7th Cir. 1965). Echeles, a member of the Illinois bar, was charged, together with two others, with suborn-

ing perjury, impeding the administration of justice and conspiracy. During the joint trial, it appeared that admissions previously made by Echeles' co-defendants would be introduced into evidence against them. Echeles contended that these admissions reflected unfairly on the question of his own guilt. Moreover, he asserted, other statements previously made by his co-defendants— absolving him from any part in the wrongdoing—would be admissible only if the co-defendants repeated them on the witness stand. Echeles moved for a severance on the ground that, since the Fifth Amendment prohibited him from calling his co-defendants to testify in his behalf, his only possible protection was through the grant of a severance. The trial court denied the motion. The Seventh Circuit reversed, holding on these facts that denial of the severance so prejudiced Echeles' defense that a new trial was required.[2]

The denial of a severance prejudiced Echeles by preventing him from effectively countering one important element of the prosecution's case. Similarly, in the instant case, rejection of the severance motion prejudicially denied Shuford the opportunity to present testimony highly relevant in the resolution of the issue of guilt or innocence.

### III

At the trial, Jordan's testimony was sought by Shuford in regard to a crucial fact on which the Government and Shuford were in sharp disagreement, namely the precise nature of Shuford's instructions to Long regarding billing practices. Shuford testified that he advised Long that the Laboratory could bill patients for missed appointments, but he added the admonition that these items should be handled in a manner as not to appear in later litigation or settle-

2. Other courts likewise have recognized that a severance is due where the moving defendant needs the evidence of a co-defendant; this need is unlikely to be met in a joint trial; and "there is a substantially greater likelihood" that the evidence would be forthcoming if severance were granted. United States v. Gleason. 259 F.Supp. 282 (S.D.N.Y. 1966). *See also* United States v. Addonizio, 313 F.Supp. 486 (D.C.N.J.1970).

ment negotiations.[3] Long, in contrast, testified to a version that was significantly different. He strongly suggested that Shuford was intending to use the misleading bills to enhance his clients' recoveries.[4]

Thus the situation presented to the jury was that if they credited Long, then they could find that Shuford intended to falsify the therapy bill submitted to the Government. On the other hand, if they believed Shuford, they could see him as the innocent victim of Long's failure to follow instructions. Plainly, the guilt or innocence of Shuford hinged, in large measure, on the outcome of this credibility dispute.

■■ No other witness testified regarding Shuford's instructions to Long. Indeed the only other potential witness with direct knowledge of this phase of the case was Jordan who, in the absence of a severance, declined to take the stand. And the Fifth Amendment gave Jordan the right not even to be called to the stand so long as he was a defendant. United States v. Keenan, 267 F.2d 118, 126 (7th Cir. 1959), cert. denied, 361 U.S. 836, 80 S.Ct. 121, 4 L.Ed.2d 104 (1959); Poretto v. United States, 196 F.2d 392, 394 (5th Cir. 1952). This right extends so far as to forbid not only the Government, but even Shuford from calling Jordan to the stand. DeLuna v. United States, 308 F.2d 140 (5th Cir. 1952); United States v. Housing Foundation, 176 F.2d 665, 666 (3d Cir. 1949). However, if Jordan's case were severed, while he would retain the privilege against self-incrimination, as a witness, he would no longer have the right not to be *called* to the stand. Landy v. United States, 283 F.2d 303 (5th Cir. 1960). Thus, absent Jordan's willingness to waive his Fifth Amendment rights while joined as a defendant with Shuford, severance was the only way of affording Shuford any possibility of persuading Jordan to testify.

■■ In a situation where the elusive quality of credibility is of such importance, the jury should have the benefit of all relevant testimony likely to shed light on the situation. We think that the denial of the severance, resulting in withholding this witness' testimony on such a critical point, so tipped the scales against Shuford that he failed to receive a fair trial. A verdict based so heavily on less than the full available testimony, where the missing testimony could, with relative ease, have been procured, should not stand.[5]

---

3. Shuford testified in part that:
 I told [Long] at that time that I thought it would be legally proper to bill [patients] for appointments made but not kept. However, to indicate this on any bills that he sent to me.
 \* \* \* \* \*
 Of course, in presenting a claim, the only certain items that are legally recoverable, for instance, a bill for broken appointment would not be an item for damages that would be recoverable.
 \* \* \* \* \*
 I told [Long] that I would not protect the payment of the bill for his broken appointments, that he would have to collect that from the patient himself.

4. Long testified in part that:
 [Shuford] told me that if the patients kept their appointments, or if they did not, that they were to be marked as if they had \* \* \*. He said that if his clients did not keep their appointments and I did not mark them down for treat-

ment anyway, when he went to court or to an insurance company with the claim, that the insurance company or the court or whatever would say well, if you had really been hurt, injured, or such, then you would have kept your appointments. This was his reason that he gave me \* \* \*. Mr. Shuford told me that the larger the medical expense as a general rule the larger the settlement.

5. It is significant that, in this case, severance would only have required two relatively uncomplicated trials in place of one—not an undue burden from the viewpoint of judicial administration. Where severance would necessitate a great number of otherwise unnecessary trials or the duplication of an unusually complex trial, a district court, in the exercise of its discretion, could well consider these factors as possible counterweights to the benefits accruing to the moving defendant from severance in the particular circumstances. *See* United States v. Turner, 274 F.Supp.

## IV

In its brief on appeal, the Government argues that, even if severance were granted, there is no assurance that Jordan "would be any more willing to waive his Fifth Amendment privilege in a separate trial as opposed to a joint trial." In support of this contention, we are cited to a number of cases which have, out of a similar scepticism, upheld the denial of a severance in circumstances arguably analogous to those present here: e. g., United States v. Frazier, 394 F.2d 258 (4th Cir. 1968); United States v. Kilgore, 403 F.2d 627 (4th Cir. 1968), cert. denied, 394 U.S. 932, 89 S.Ct. 1204, 22 L.Ed.2d 462 (1969); United States v. Kahn, 381 F.2d 824 (7th Cir. 1967), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); Kolod v. United States, 371 F.2d 983 (10th Cir. 1967).

■ However, none of the cases relied upon by the Government is apposite here. In those cases, the courts simply refused to accept an appellant's unsupported assertion that, if severance had been ordered, a co-defendant would thereafter have waived his Fifth Amendment privileges and testified as prom-

ised.[6] Where, for the first time on appeal, a party raises such an argument without support in the record, an appellate court rightfully refuses to indulge in pure supposition as to what the behavior of a co-defendant would have been if the requested severance had been granted.

In the present instance, however, we are not called upon to engage in an exercise of clairvoyance. Both Shuford and Jordan indicated quite clearly to the trial judge not only that Jordan would testify if granted a severance, but also the precise content of the expected testimony and its importance.[7] This is not to say that it is beyond question that Jordan's testimony would be forthcoming after severance. The movant is not put to such stringent proof. A reasonable probability appearing that the proffered testimony would, in fact, materialize, Shuford should not have been foreclosed from the benefits of Jordan's pivotal testimony simply because that probability was not an absolute certainty. United States v. Echeles, 352 F.2d 892 (7th Cir. 1965); United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y. 1966).[8]

---

412 (D.C.Tenn.1967); United States v. Crisona, 271 F.Supp. 150 (S.D.N.Y.1967) (Mansfield, J.). The paramount question, however, is always whether refusal of the severance impairs the fairness of the trial.

6. See, e. g., United States v. Kilgore, 403 F.2d 627, 628 (4th Cir. 1968), cert. denied, 394 U.S. 932, 89 S.Ct. 1204, 22 L.Ed. 2d 462 (1969):

It does not appear, however, that an adequate record was made below to sustain such a contention. It was nowhere demonstrated that the codefendant was willing, at a separate trial, to corroborate Morris' story * * *. We cannot simply assume that the corroborative testimony would have been forthcoming * * *.

To the same effect, see, United States v. Kahn, 366 F.2d 259, 263–264 (2d Cir.), cert. denied, 385 U.S. 948, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966); United States v. Kahn, 381 F.2d 824 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L. Ed.2d 661 (1967).

7. See note 1, supra; part III, supra.

8. In his dissent, Judge Haynsworth would uphold the denial of the severance because in his view the record does not reflect a sufficient likelihood that Jordan would testify at Shuford's separate trial and that, in fact, it would be against Jordan's interest so to testify.

It is true that fine judgments as to Jordan's state of mind in the event of severance are not easily made. While it would overstate the matter to say that beyond any possibility of doubt Jordan would testify as promised, it is as certain as may reasonably be expected. We differ with our dissenting brother in the interpretation of the record in this regard. Jordan's failure to repeat in detail the arguments and conclusions of Shuford's attorney, recited in the presence of Jordan and his attorney, concerning Jordan's testimony is, to our minds, highly indicative of their agreement with Shuford's analysis and that if severance were granted Jordan would in fact testify. Significant is the fact that the trial court

We reach this conclusion, aware of the vital importance of Jordan's testimony to Shuford's defense, and in light of the substantial expectation that Jordan, if severance were granted, would indeed testify as indicated. We emphasize that our approach in this case does not mandate a severance in every situation where one defendant desires the testimony of another. We hold only, on the specific facts of this case, that Jordan's testimony took on unusual importance for Shuford's defense; that this testimony could become available only by severance; and that in these circumstances it was reversible error to deny Shuford's motion.[9]

V

We perceive no error in the court's overruling Jordan's motion for severance. Unlike Shuford, Jordan was not confronted with an inability to produce testimony vital to his defense. Jordan, in addition, complained that he was prejudiced by the jury argument of Shuford's attorney who said, "Mr. Shuford answered questions in a direct, forthright manner without evasion." Jordan maintains that this was an oblique reference to his failure to take the stand. We find no substance in this argument. It is true that there are decisions holding that a defendant may be entitled to a new trial because comment prejudicial to him was made in the jury's presence by a co-defendant's attorney. But these are cases in which the co-defendants were attempting to cast guilt upon each other. *See* DeLuna v. United States, 308 F.2d 140 (5th Cir. 1962). This is not the case here; in the existing situation counsel's remark lacked the sinister implication attributed to it by Jordan.

The other assignments of error made in Jordan's appeal are equally unsupportable. However, the peculiar circumstances of the case prevent us from affirming Jordan's conviction at this time. As the indictment and the evidence at trial show, Jordan's involvement with the substantive crime charged was that of an aider and abettor of Shuford as principal. It is an accepted rule that where the only potential principal has been acquitted, no crime has been established and the conviction of an aider and abettor cannot be sustained.[10] Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed. 2d 335 (1963). This rule, undeviatingly followed for generations, would be offended if, on retrial, Shuford, the principal, should be acquitted and the conviction were allowed to stand as to Jordan, the aider and abettor. We therefore vacate Jordan's conviction on the substantive count, under 18 U.S.C. §§ 2 and 1001, contingent upon Shuford's conviction, at his retrial, of the substantive offense charged.

The remaining count on which Jordan stands convicted charges a conspiracy between Jordan, Shuford and other unindicted individuals. It is well recognized that a conviction of one conspirator cannot stand beside the acquittal of his *only* co-conspirator, Romontio v. United States, 400 F.2d 618 (10th Cir. 1968); Lubin v. United States, 313 F.2d 419 (9th Cir. 1963). Where, however, the indictment names additional, untried co-conspirators, conviction will be affirmed notwithstanding the acquit-

---

was effectively apprised by both counsel of the problem presented. Severance was the obviously available solution.

9. Shuford also raises a number of alleged errors in the trial court's evidentiary rulings and challenges the sufficiency of the evidence to convict him. In view of our present holding reversing Shuford's conviction, which will require a retrial, it is unnecessary to decide these issues at the present time. They may not arise in the new trial, or if they do, the context may be different.

10. Lest we be misunderstood, we emphasize that an aider and abettor may be tried before the principal and where the commission of a crime is proved, an aider and abettor may be tried even if the principal is unknown. Feldstein v. United States, 429 F.2d 1092 (9 Cir.), cert. denied, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed. 2d 159 (1970).

tal of the co-defendant. Cross v. United States, 392 F.2d 360 (8th Cir. 1968); United States v. Gordon, 242 F.2d 122 (3rd Cir. 1957).

 Nevertheless, this rule cannot be invoked to affirm Jordan's conspiracy conviction. The trial court charged the jury that in order to convict on the conspiracy count it would be sufficient if they found an agreement between "the defendants and named [but unindicted] co-conspirators, or at least two of the number." It is impossible to know whether the jury found that Jordan conspired with Shuford alone or with others and it would be improper to speculate in this regard. We therefore vacate Jordan's conviction as to the conspiracy count also and grant him a new trial on that charge.

Reversed and remanded as to No. 71–1424; vacated and remanded with instructions as to No. 71–1425.

HAYNSWORTH, Chief Judge (dissenting):

There is no disagreement between my brothers and me over the general principles of law which should govern our decision. We all agree that a motion to sever is addressed to the sound discretion of the District Judge, though its denial is reviewable by the Court of Appeals, if denial deprives a trial of essential fairness. We do differ in our appraisal of the practical situation which confronted the District Judge. In my view of the record and the practical problem presented, the District Court's denial of Shuford's motion for a severance was in no sense an abuse of the sound discretion lodged in it. I must conclude, therefore, that we overreach our authority in granting a new trial and in directing a severance.

Before the commencement of the trial, Shuford made a motion for a severance. Through counsel, he stated that he intended to take the witness stand, that his testimony would be favorable to Jordan, as well as to himself, that he had expected Jordan to testify in his own defense, and that such testimony would also be favorable to Shuford. He learned, however, from Jordan's attorneys that Jordan might not testify for fear that the Government would use a prior conviction to impeach him as a witness. At that time he represented that Jordan would be willing to testify as a witness for Shuford if Jordan was not then on trial, but he anticipated some problem if the trial proceeded without a severance.

The motion was denied at that time with leave to renew it later. It was renewed later, after the close of the Government's case, at which time Shuford's attorneys had been informed that the decision had been made to withhold Jordan from the witness stand. Shuford's lawyer then represented to the court that if Jordan were severed from the trial, a mistrial being declared as to him, so that Shuford could call him as a witness in the continuation of the trial as to Shuford, Jordan would testify that he knew of no instructions to Long to falsify reports, that Jordan knew of no error or falsity in the Wheat bill until he learned of it as a result of the F.B.I.'s investigation, that he had conspired with no one to falsify reports or claims, and that when he learned that discrepancies existed he had told Mr. Long to correct them all.

There was no representation that Jordan could testify to anything providing direct corroboration for Shuford's testimony about his conversations with Long. The only representation was that Jordan would offer testimonial exculpation of himself. Such testimony from Jordan might well have provided tangential support for Shuford, but the proffer does not suggest the direct and immediate relevance indicated by the majority opinion.

Jordan and his attorneys participated in this discussion only to the extent of a statement that it was not then anticipated that Jordan would testify for the reasons previously suggested by Shuford's attorney, fear that the Government would use the earlier conviction to

impeach him and fear that his appearance as a witness might somehow bolster the Government's case against Jordan.

The District Court thereupon denied Shuford's motion, but it did so with an extension of substantial protection to Jordan should he decide to testify. The Court stated that if Jordan should testify in the joint trial it would not permit the Government to use his prior conviction as a basis for impeachment of him as a witness.

Thereafter, Jordan made a motion for a directed verdict which was denied. He then moved for a severance on the ground that a joint trial with Shuford was unfair to Jordan. He had not joined in Shuford's earlier motion to sever, however, and at no time did he indicate a willingness to have a mistrial declared as to him and to testify, without a claim of his Fifth Amendment privilege, as a witness for Shuford in a continuation of the trial as to Shuford. The record contains no disclaimer by Jordan of Shuford's lawyer's pretrial representation that Jordan would be willing to testify as a witness for Shuford if Jordan were not then on trial, but there is no affirmative representation by Jordan, or his lawyer, with respect to any phase of the matter, and, with respect to him, the situation had materially changed after the joint trial had proceeded to the close of the Government's case.

At the close of the Government's case, the only practical course open to the Court, if a severance was to be granted, was the one suggested by Shuford's counsel—that a mistrial be declared as to Jordan and the trial proceed as to Shuford.[1]

If Jordan had then been eliminated from the case on Shuford's motion under circumstances which would permit his subsequent separate trial, it seems to me highly speculative that Jordan would have been available as a witness in Shuford's defense in any meaningful sense. No longer on trial himself, Jordan would then have been without the protection of the Court's order preventing the Government's impeachment use of his prior criminal record. At that time his counsel would have been compelled to advise him that whatever he said as a witness in Shuford's defense might be used in whole or in part in his subsequent trial. If he had any concern that his testimony as a witness might bolster the Government's case against him, as was represented in Shuford's second motion for a severance, the inhibiting weight of that concern would be as heavy upon Jordan whether or not he remained jointly on trial with Shuford.

Under all these circumstances, therefore, it seems to me that the District Judge's assurance that Jordan would not be subject to impeachment by the Government on the basis of his prior record if he testified at the joint trial was the fairest and most practical protection available, and it was equally so in the interest of both Shuford and Jordan. A severance would have given neither one more protection on that score and would not tend to alleviate in any way Jordan's concern about filling in some gap in the Government's case against him.

Far from abusing his discretion, therefore, it seems to me the District Judge offered a reasonable solution to the dilemna of the defendants. Rather than depriving the trial of essential fairness, it seems markedly fair. Now we give assurance that Jordan will testify in Shuford's defense since we leave standing his conviction as an aider and abettor, conditioned upon Shuford's subsequent conviction, but neither Shuford nor Jordan had any rightful claim to that kind of advantage.[2] The District

---

1. It is possible that Jordan and his lawyer would have consented to this since he later sought a severance as to himself, but the record contains no affirmative evidence of it. He might well have withheld his consent in the hope of erecting a bar against his subsequent retrial.

2. Since the developments have left Jordan with no hope of avoidance of his conviction except by Shuford's acquittal, he

Court's very practical resolution of the matter was more in the interest of justice and without the taint of basic unfairness which, alone, would warrant our awarding a new trial because of a denial of a motion for severance.

The situation in *Echeles* [3] was far different from the one which confronted the District Judge here. Echeles had represented Arrington, a defendant in a narcotics case who claimed an alibi. Arrington procured the falsification of a motel registration card and supporting testimony of the motel operator and clerk in aid of the alibi defense. The falsity of this evidence was discovered before the conclusion of the narcotics case. Thereupon, Arrington admitted his participation in the perjury, but twice in open court informed the judge that Echeles, his lawyer, had had nothing to do with it.

When Echeles, Arrington and others, were being tried on the perjury charges, Arrington's admissions of perjury, made in the narcotics trial, were received in evidence, but his statements exonerating Echeles were excluded. Unlike this case, Arrington was the principal who had full knowledge of the extent, if any, to which Echeles had participated in the perjurious scheme. Twice in the narcotics case, while confessing his own participation, he had stated that Echeles had nothing to do with it, and there was no reason to suppose he would not repeat such statements if, in a severed trial, Echeles did call him as a witness in his defense. Moreover, the introduc-

tion of Arrington's admissions and the exclusion of his accompanying exoneration of Echeles inevitably had a prejudicial effect on Echeles, the lawyer representing Arrington when the perjured testimony and false registration card were introduced.

Here the situation was quite different. Shuford stood in no comparable need of Jordan's testimony, for Jordan could offer no direct contradiction of Long's testimony about the instructions he had received from Shuford. Nor did any extrajudicial admissions of Jordan come into the case which adversely affected Shuford's interest.

And, finally, the Court here, by denying the Government the right to use Jordan's prior criminal record in his cross examination, freed Jordan from all substantial reason for not taking the witness stand in the joint trial which would not be present in an equal way had Shuford's severance motion been granted. In *Echeles*, nothing was done to relieve Arrington's very understandable disinclination to testify in a joint trial; probably nothing of that sort could have been done.

This case simply cannot be blown up into the extraordinary kind of situation presented in *Echeles*. It is a frequently encountered situation routinely left to the discretion of the trial judge. The manner in which the trial judge exercised his discretion here deserves our commendation rather than our criticism.

I would affirm the convictions.

has every incentive for active cooperation to procure that acquittal, even to the point of grave incrimination of himself in the process.

3. United States v. Echeles, 7 Cir., 352 F.2d 892.