UNITED STATES of America, Plaintiff,

v.

Gregory L. DePALMA et al., Defendants.

No. 78 CR 401.

United States District Court,
S. D. New York.

March 16, 1979.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City by Nathaniel H. Akerman, Scott G. Campbell, Asst. U.S. Attys., New York City, for plaintiff.

Robert L. Ellis, New York City, for defendant DePalma.

Tigar & Buffone, Washington, D.C., for defendant Weisman by Michael Tigar, John J. Privitera, Washington, D.C., of counsel.

Martin B. Adelman, New York City, for defendant Fusco.

Murray Richman, New York City, for defendant Nersesian.

Cohn, Glickstein, Lurie, Ostrin & Lubell, New York City, for defendant Horwitz by Jonathan W. Lubell, Mary K. O'Melveny, New York City, of counsel.

Litman, Friedman, Kaufman & Asche, New York City, for defendant Goodman by Richard Asche, New York City, of counsel.

Douglas F. Eaton, New York City, for defendant Cannatella.

Barry I. Slotnick, New York City, for defendant Pacella.

Gregory J. Perrin, New York City, for defendant Marson.

## OPINION

SWEET, District Judge.

This court presently has four motions pending before it. Three are for severance, by defendants Goodman, Marson and Cannatella, and the fourth was the subject of an *in camera* proceeding before this court. The relief requested at the *in camera* proceeding is hereby denied at this time with leave granted to renew at any future time. For the reasons set forth below, Goodman's motion for severance is granted; the motions by Cannatella and Marson are denied.

*Goodman's Motion*

■ Goodman seeks a severance on the basis that Eliot H. Weisman, a co-defendant and alleged co-conspirator ("Weisman") possesses certain exculpatory information and that Weisman's testimony, unavailable at a joint trial, is crucial to his defense.[1] In determining whether to grant a severance in order to obtain testimony of a co-defendant four criteria must be considered:

1. Goodman also seeks severance on certain other grounds: (1) to avoid the introduction of evidence prejudicial to Goodman; (2) to avoid problems which arise under the doctrine of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); (3) to avoid a spillover effect concerning evidence suggesting that certain defendants in this action have links

with organized crime; and (4) to obviate the necessity for Goodman to participate in a second lengthy trial. The court finds these grounds are insufficient to support the requested severance motion, but it need not discuss them in detail because of its holding reflected in the text of this opinion.

(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege, . . .

(2) the degree to which the exculpatory testimony would be cumulative, . . .

(3) the counter arguments of judicial economy, and . . .

(4) the likelihood that the testimony would be subject to substantial, damaging impeachment . . . .

*United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir. 1975).[2]

■ Goodman has submitted to this court an affidavit by Weisman stating that he would waive his Fifth Amendment privilege, and testify at a separate trial of Goodman, if that trial were subsequent to Weisman's own trial. The affidavit also sets forth the substance of Weisman's proposed testimony. Further, at a voir dire before this court, Weisman took the stand and, under cross-examination by the Assistant United States Attorney, re-affirmed that his affidavit was based on personal knowledge and his willingness to waive his Fifth Amendment privilege and testify at a trial subsequent to his. The situation here is more favorable to Goodman than that which existed in *United States v. Shuford,* 454 F.2d 772, 778 (4th Cir. 1971), where the court noted:

In the present instance, however, we are not called upon to engage in an exercise of clairvoyance. Both Shuford and Jordan indicated quite clearly to the trial judge not only that Jordan would testify if granted a severance, but also the precise content of the expected testimony and its importance. This is not to say that it is beyond question that Jordan's testimony would be forthcoming after severance. The movant is not put to such stringent proof. A reasonable probability appearing that the proffered testimony would, in fact, materialize, Shuford should not have been foreclosed from the benefits of Jordan's pivotal testimony simply because that probability was not an absolute certainty. *United States v. Echeles,* 352 F.2d 892 (7th Cir. 1965); *United States v. Gleason,* 259 F.Supp. 282 (S.D.N.Y.1966). (Footnotes omitted.)

Goodman has satisfied this first criterion with respect to Weisman's proposed testimony.

Contrary to the Government's contention, *United States v. Finkelstein, supra,* does not require a contrary result. First, not only is there here a sworn affidavit, but, pursuant to a Government subpoena, Weisman has testified as to the information contained therein. Second, although in *Finkelstein* the affidavit of the witness was not convincing, the court, when considering the quality of the showing, did not at that juncture consider the alternative of ordering the sequence of trials. The Second Circuit, in distinguishing cases where such consideration was relevant (*see e. g., Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir. 1970)), held that such ordering was not practical in the case before it—four separate trials would have been required. Such is not the situation here. As in *Wainwright, supra,* there is "[only] one defendant with a unique interest in being tried later than the others . . . ". *Id.* at 1022. *See also United States v. Shuford, supra* at 777 n. 5. Severance is warranted in a situation such as this. *See United States v. Gleason,* 259 F.Supp. 282 (S.D.N.Y. 1966).

■ Furthermore, contrary to the Government's assertion, Goodman does not have to establish that Weisman would be willing to testify at a separate trial of Goodman regardless of the order of trials. Although *United States v. Gay,* 567 F.2d 916 (9th Cir.), *cert. denied,* 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978) does support the proposition that this court is not required to "play games" with its trial calendar, at no point does the Ninth Circuit

---

**2.** Other statements of criteria are found in *United States v. Taylor,* 562 F.2d 1345 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). Furthermore, whether or not each of the four considerations are met, a severance is warranted in consideration of all relevant factors taken as a whole.

state that such consideration alone is sufficient for denial of severance. Indeed, the court stated that:

> We mean in no way suggest that trial courts should, in all cases, reject an offer of a co-defendant witness to provide exculpatory testimony conditioned on a separate trial prior to that of the movant. Indeed, there is no question but that the purpose of a severance is more fully implemented when the co-defendant witness is tried first, and consequently is not deterred from providing exculpatory testimony by the prospect of forfeiting his Fifth Amendment privilege. Conversely, in circumstances wherein the trial court would abuse its discretion by not granting a severance, it might well be error for the court to grant a severance in name only while still requiring that the co-defendant witness offering exculpatory testimony be tried after the movant. (Footnote omitted.)

*Id.* at 921. *See also United States v. Echeles,* 352 F.2d 892, 898 (7th Cir. 1965). Therefore, the ordering of trials, and the number thereof, although relevant considerations, are not dispositive in themselves. In this instance it is appropriate to order the trials so as to make Weisman's testimony available to Goodman.

With respect to the second criterion, Weisman's affidavit sets forth the substance of his proposed testimony. Further, upon examination by this court, Weisman stated that the contents of the affidavit were based upon personal knowledge. A review of the evidence from the first trial, especially that of the witness Brodsky as to certain matters, including identifying who was in attendance at the meeting at the St. Regis Hotel, has persuaded this court that Weisman's proposed testimony would be exculpatory and not cumulative. This criterion is satisfied.

As to the third criterion, while it is true that a separate trial for Goodman would not serve judicial economy, "notwithstanding the need for efficiency in judicial administration, a joint trial is inappropriate if it sacrifices a defendant's right to a fun-

damentally fair trial." *Shuford, supra,* 454 F.2d at 776. The burden of one separate trial, in view of all the aforementioned as well as the proposed stipulations offered by Goodman's counsel at oral argument, which would reduce the length of the trial, does not overcome Goodman's need for the proffered testimony.

Concerning the fourth criterion, the proposed exculpatory testimony would not, in the context of the trial, be subject to such substantial damaging impeachment as to warrant denial. Weisman's testimony itself would be contradicted mainly by other witnesses whose testimony has been uncertain in areas and whose credibility has been seriously contested. As to Weisman himself, although his credibility would be in question, so indeed is that of the main Government witnesses against Goodman: Brodsky and Kosman. In this case, where the credibility of many of the witnesses and much of the evidence will be attacked, the impeachment cannot be said to be so substantial as to defeat Goodman's motion.

For the above-stated reasons, defendant Goodman's motion for a severance is granted. Goodman's retrial shall be set down for trial immediately subsequent to the retrial of his co-defendants.

### Marson's and Cannatella's Motions

Defendants Marson and Cannatella have separately moved this court for severance on the ground of being physically unable to stand trial. Both motions have been opposed by the Government. On March 6, 1979 and March 12, 1979 this court held evidentiary hearings with respect to the physical conditions of Cannatella and Marson, respectively, during which medical testimony derived from physical examinations and laboratory tests were submitted to this court. Dr. Myer Texon was the examining physician for the Government in each instance; also Dr. Richard N. Roger testified as to Marson's condition and Dr. Neil Dashkoff testified as to Cannatella's condition. Each of these well qualified physicians have submitted to this court detailed reports documenting their findings and opinions.

With the exception of whether or not Cannatella suffered a myocardial infarction in November, 1978, the conditions of these two defendants are not in serious dispute.[3] The major controversy exists between the opinion of Dr. Texon that Cannatella and Marson are capable of standing trial and Drs. Dashkoff and Roger, treating physicians, that standing trial constitutes a substantial hazard to the life and health of their patients.

 Motions of this nature, as with all motions for severance, are to be determined by the discretion of the trial judge. *See Bernstein v. Travia,* 495 F.2d 1180, 1182 (2d Cir. 1974). The exercise of this discretion in the face of the medical testimony is agonizing, difficult, and unavoidable. As has been stated by the Chief Judge in this Circuit,

> whether a defendant's physical condition is so poor as to require a continuance or severance is not only a difficult determination for a judge to make, but it is one which carries with it the tremendous responsibility of weighing the invariably unpredictable factor of a defendant's health against the Government's, indeed the public's, legitimate interest in a fair and speedy disposition. Troublesome though it may be, however, that decision, as we have repeatedly held, *see e. g., United States v. Bernstein,* 417 F.2d 641, 643 (2d Cir. 1969); *United States v. Knohl,* 379 F.2d 427 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967) is one reserved to the sound discretion of the district judge. (Footnote omitted.)

*Id.* at 1182.

Preliminarily, there is no difficulty in determining that both Cannatella and Marson are entirely capable and competent to participate in their defense. No serious contention to the contrary is advanced. Similarly, there is no question but that strenuous physical exertion is contra-indicated for both men. What is at issue is the effect of emotional stress upon their physical condition. No objective measure to determine this effect was known to the witnesses. However, there was comparatively little dispute as to the physical condition of each defendant.

Cannatella is a male, 42 years of age, who in March, 1978 suffered a myocardial infarction (heart attack) which permanently disabled a portion of his heart. Cannatella also suffers from arteriosclerotic cardiovascular disease, which results in blockage of his arteries. He has frequent angina symptoms and takes various medications, including nitroglycerine to relieve angina and valium to reduce anxiety. It is not unusual for him to take 10 to 15 nitroglycerine pills a day. There is no evidence of any adverse side effects from the medicine. Upon prior hearings on this subject, it was established that he is not a candidate for a coronary bypass at this time.

In November, 1978 during the course of the prior trial upon this Indictment, Cannatella was admitted to the Lutheran Medical Center, Brooklyn, New York, upon a complaint of chest pain. Dr. Dashkoff, Cannatella's doctor from Buffalo, New York, upon a review of the reports of the physicians of Lutheran and the CPK enzyme test, concluded that Cannatella suffered a myocardial infarction within the area of the heart permanently disabled by the prior infarction. Dr. Texon drew a different conclusion, basing his conclusion not only on the CPK enzyme test but on the electrocardiogram and the SGOT and LDH enzyme tests, an opinion which was supported by that of the attending physician at Lutheran, who released Cannatella within 72 hours after his admission to the hospital. For the purposes of this opinion it is assumed that some additional undefinable damage was done to Cannatella's heart muscle even though the evidence in this regard is inconclusive.

Marson is a male, 68 years of age, approximately five feet five inches tall and

---

**3.** However, there is no dispute that even if Cannatella suffered such an infarction, such did not cause any substantial additional damage to that which was previously damaged. It is therefore principally relevant as an indication of the effect of the stress of trial.

weighing 225 pounds. He has a variety of ailments, including (i) a minor case of diabetes mellitis for which no treatment is needed, (ii) gout, (iii) an enlarged liver most probably resulting from alcoholic abuse, (iv) angina, (v) shortness of breath and (vi) coronary[4] and hypertensive[5] heart disease.[6] Marson takes medication, including nitroglycerin, to stabilize his condition, none of which has any adverse side effects. He has been advised by various physicians to diet and abstain from alcohol, which advice has not been consistently followed.

The fundamental difference between the testimony of the medical experts related to the ability of the defendants to stand trial. As to Marson, Dr. Roger testified concerning the seriousness of his condition, its probable consequence at some undefined future time, and his belief that the stress of trial would present a substantial hazard to Marson's life and health.[7] Dr. Dashkoff testified similarly with respect to the effect of a trial upon Cannatella. Dr. Texon concluded otherwise.

Both Marson and Cannatella are, in the opinion of the expert medical witnesses, classified as class III C patients. This functional classification means that they have cardiac disease, that their ordinary activity should be restricted and that strenuous efforts, including emotional stress, should be eliminated. What is at issue therefore is whether the emotional stress of standing trial requires that these defendants be granted a severance. Neither defendant is here seeking a continuance on the basis that they would be more capable of standing trial at a later date. Both defendants will always have heart problems and be subject to the risks of further damage either with or without emotional stress.

Defendant Cannatella has on two previous occasions, once prior to the first trial and then during that trial, moved for a severance on the basis set forth at this time. These motions were denied and Cannatella was tried with the other defendants named in the Indictment and, with the exception of the November episode set forth above, withstood the emotional stress of a 12-week trial.

Defendant Marson also made a motion, prior to the first trial, for a severance on the basis of ill health. Such motion was unopposed by the Government and granted by this court. Marson has now renewed this motion, which the Government now opposes.

Various medical journals containing articles on the effect of emotional stress upon heart conditions similar to those of Cannatella and Marson were made available to the court. For the purposes of this opinion it must be assumed that some stress will be involved and therefore some increased risks even though neither defendant has indicated any intention to testify and thus directly participate in the trial. See *Bernstein, supra* at 1182. However, this risk will remain constant throughout the lives of these defendants; nor can they be forever, or indeed even momentarily, guaranteed an absence of emotional stress. The very existence of an impending, unresolved indictment involving serious criminal charges must be viewed as stressful.

To date, two principal defendants have pleaded guilty, and many of the issues presented upon the first trial were resolved in its course. It is thus anticipated that trial time will be substantially reduced. Further, in view of the denial of certain relief sought by the Government, court hours can be regularized and restricted to four days a week. Notwithstanding, of course, risk remains.

---

**4.** Coronary heart disease affects the arteries which supply blood to the heart.

**5.** Hypertensity causes increased heart work which results in a thickened, or enlarged, heart.

**6.** There is no evidence of his having suffered any myocardial infarction.

**7.** Dr. Magidson, the expert upon whose written report Marson also relies, and who was not present upon the hearing, only advises against Marson being away from his home for a protracted period of weeks or months.

This risk must be balanced against the Government's right to present its charges and to fulfill its public duty. To grant the motion on the basis advanced would be to effectively deny the Government a trial of these defendants, who may never be more capable of standing trial, and it is denied as to both defendants.

Every effort will be made to protect the defendants and it is strongly urged, as it was previously with respect to Cannatella, that both defendants have constant EKG monitoring during the trial, which monitoring the court has been advised can be electronic and unobservable. In the event of any objective evidence of a worsening of either defendant's heart condition, leave is hereby granted for renewal of these applications.

IT IS SO ORDERED.